**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

KENNETH JAMES BROWN,

                Petitioner,                Case Number: 2:06-CV-14341

v.                                                HON. NANCY G. EDMUNDS

KENNETH ROMANOWSKI,

                Respondent.

_____/

## **OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY**

This is a habeas case under 28 U.S.C. § 2254. Petitioner Kenneth James Brown, presently incarcerated at the Saginaw Correctional Facility in Freeland, Michigan, challenges his convictions for two counts of first-degree criminal sexual conduct. He argues that he was denied counsel at a critical stage of the proceedings, the prosecutor committed misconduct, the trial court judge ceded control of the proceedings to the prosecutor, appellate counsel was ineffective, the cumulative effect of the alleged errors denied him a fair trial, and that his claims are not procedurally barred. For the reasons set forth below, the Court denies the petition.

### **I. Facts**

Petitioner's convictions arise from the sexual assault and stabbing of a woman following a music festival. The Michigan Court of Appeals summarized the facts adduced at trial as follows:

> The victim attended a festival in Detroit on May 18, 2002. She went to a bar and met a friend, with whom she went to the Liberty Rider's Motorcycle Club. The victim met defendant and codefendant at the club. After speaking briefly with both men, defendant grabbed the victim, placed her over a pool table, and inserted

his penis into her vagina from behind. At the same time, defendant pushed the victim's head and forced her to perform oral sex on codefendant, who was seated in front of her. After this incident, the victim went into the bathroom. Soon after, codefendant entered the bathroom, slit the victim's throat, and stabbed her in the back. The victim was later transported to the hospital, where a rape kit was performed. Although semen samples were retrieved, the forensic serologist was unable to make a positive identification. The victim positively identified defendant and codefendant from a photographic lineup.

*Brown v. Romanowski*, No. 250867, slip op. at 1 (Mich. Ct. App. June 14, 2005).

## II. Procedural History

Following a jury trial in Wayne County Circuit Court, Petitioner was convicted of two counts of first-degree criminal sexual conduct. He was sentenced to twelve to twenty years imprisonment for each conviction, to be served concurrently.

Petitioner filed an appeal of right in the Michigan Court of Appeals, raising the following claims:

I. The trial court committed reversible error and denied Kenneth Brown his state and federal constitutional rights to a fair trial by: (1) granting the prosecution's M.C.R. 6.121(A) motion to consolidate Mr. Brown's trial with that of co-defendant Robert Hemp, and (2) denying Kenneth Brown's motion for separate juries, where the offenses of Brown and Hemp were unrelated as they did not involve the same conduct or a series of connected acts or acts constituting part of a single scheme or plan.

II. Appellant's state and federal constitutional right to counsel was denied by trial counsel's deficient performance where trial counsel: (A) failed or neglected to allow Kenneth Brown to take the witness stand in his own defense, and (B) failed or neglected to request the appointment of a DNA expert, medical doctor or sexual assault examiner in order to substantiate the defense of consent.

The Michigan Court of Appeals affirmed Petitioner's convictions. *People v. Brown*, No. 250867 (Mich. Ct. App. June 14, 2005).

Petitioner filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims raised in the court of appeals. The Michigan Supreme denied leave to appeal.

*People v. Brown*, No. 129254 (Mich. March 27, 2006).

Petitioner then filed a motion for relief from judgment in the trial court, raising the following claims: (i) denied counsel at a critical pre-trial stage; (ii) prosecutorial misconduct; (iii) trial court abused its discretion; (iv) ineffective assistance of appellate counsel; and (v) cumulative errors. The trial court denied the motion. *People v. Brown*, No. 02-0116611-01 (Wayne County Circuit Court July 10, 2007).

Petitioner filed applications for leave to appeal the denial of his motion for relief from judgment in the Michigan Court of Appeals and Michigan Supreme Court. Both state appellate courts denied leave to appeal. *People v. Brown*, No. 279881 (Mich. Ct. App. Aug. 30, 2007); *People v. Brown*, No. 135429 (Mich. April 28, 2008).

Petitioner then filed the pending habeas corpus petition. He raises the following claims:

I. Petitioner was denied counsel at a critical pre-trial stage of his criminal proceedings.

II. Petitioner was denied his right to fair trial due to the prosecution's gross misconduct when she placed inadmissible, irrelevant, prejudicial and perjured testimony before the jury, all as a result of the prosecution's refusal to abide by her statutory duties in order to gain a conviction of an innocent man.

III. Appellant was denied his basic and fundamental constitutional due process rights when the trial court acquiesced control of the proceedings over to the prosecution, and failed to recognize that it had the authority to rule on inadmissible evidence, which resulted in the conviction of an innocent man.

IV. Appellant was denied his basic fundamental rights to due process as guaranteed under both state and federal constitutions, when appellate counsel denied appellant of his appeal of right.

V. Appellant was denied his fundamental due process rights as guaranteed under both state and federal constitutions, as a result of the cumulative effect of reported errors committed before, during and after trial, and on appellant's appeal of right.

VI. Appellant asserts that not only has he satisfied the cause and prejudice

requirements, but further asserts that a fundamental miscarriage of justice has occurred, because appellant is actually innocent of his criminal convictions.

### III. Discussion

### A. Procedural Default

Respondent argues that all of Petitioner's claims are procedurally defaulted. "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003), *citing Lambrix v. Singletary*, 520 U.S. 518, 525 (1997). "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525. In this case, the Court finds that the interests of judicial economy are best served by addressing the merits of these claims.

### B. Alleged Denial of Counsel

Petitioner argues that habeas relief is warranted because his attorney's assistance at critical stages was encumbered by a conflict of interest and, additionally, was so outside the realm of reasonably competent professional assistance as to render her essentially absent.

A criminal defendant is entitled to the effective assistance of counsel free from conflict. *Holloway v. Arkansas*, 435 U.S. 475, 483-84 (1978). The Sixth Circuit has summarized the difference between the typical ineffective assistance of counsel claim and a claim based on an allegation that counsel was burdened by a conflict of interest as follows:

> Conflict of interest cases involve a slightly different standard than that used in traditional ineffectiveness claims. *See* [*Thomas v. Foltz,* 818 F.2d 476, 480 (1987).] Where there is conflict of interest, "counsel breaches the duty of loyalty, perhaps the most basic of counsel's duties." *Strickland*, 466 U.S. at 692, 104 S.Ct. 2052. Thus, when an actual conflict of interest exists, prejudice is presumed. *See*

4

> *id.* Prejudice is presumed, however, "only if the defendant demonstrates that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.'" *Id.* (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 345-50, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980)). Thus, while the rule is rigid, it is not a *per se* rule. *See id.*

*United States v. Hall*, 200 F.3d 962, 965 (6th Cir. 2000).

In short, cases involving an actual conflict of interest have a lessened standard of proof because prejudice will be presumed upon a showing that a conflict existed which adversely affected counsel's performance. However, *Cuyler's* lessened standard of proof has never been extended by the United States Supreme Court to any conflict other than joint representation. *Smith v. Hofbauer*, 312 F.3d 809, 818 (6th Cir. 2002). The instant case does not involve joint representation. Thus, *Strickland* is the proper standard for determining whether counsel's alleged conflict of interest rendered her performance constitutionally deficient.

To establish that he received ineffective assistance of counsel, a petitioner must show, first, that counsel's performance was deficient and, second, that counsel's deficient performance prejudiced the petitioner. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A petitioner may show that counsel's performance was deficient by establishing that counsel's performance was "outside the wide range of professionally competent assistance." *Id.* at 689. This "requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687. To satisfy the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. "[T]he focus should be on whether the result of the trial was 'fundamentally unfair or unreliable.'" *Tinsley v. Million*, 399

5

F.3d 796, 802 (6th Cir. 2005), *quoting Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993).

"Because advocacy is an art and not a science, . . . [counsel's] strategic choices must be respected," if they were "made after thorough investigation of law and facts relevant to plausible options." *Strickland*, 466 at 690. The Supreme Court explained:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proven unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

*Id.* at 689.

Petitioner argues that counsel was ineffective because her relationship with his co-defendant's attorney led her to have no contact with Petitioner prior to trial, conduct no investigation, fail to move to suppress DNA evidence, fail to move for appointment of an expert witness, fail to move for discovery, and not permit Petitioner to testify in his own defense. Petitioner's claims that counsel was ineffective for failing to allow Petitioner to testify and for failing to call an expert witness were raised and denied on direct review. With regard to Petitioner's right to testify, the Michigan Court of Appeals, applying the standard articulated in *Strickland,* reasoned, in relevant part:

> A defendant's decision not to testify is deemed a strategic decision best left to defendant and his counsel. . . . The trial court asked defendant if he wanted to exercise his right to remain silent, if he understood he had a right to testify, and if he still wanted to remain silent. Defendant answered "Yes" to all of these questions. At defendant's *Ginther*[] hearing, he testified that he had spoken with

6

> his lawyer regarding his desire to testify. Defendant admitted that trial counsel
> advised him, based on her experience, not to testify because it would hurt his
> case, and therefore he followed her advice. At the *Ginther* hearing, the trial court
> stated that "[a]fter seeing him testify for five minutes, I can see why she did not
> put him on the stand." . . . Trial counsel's decision not to cal defendant to testify
> did not fall below the standard of reasonableness for an attorney.

*Brown*, slip op. at 3.

Petitioner has not shown that his decision not to testify was anything other than a joint decision between him and his attorney. He voluntarily acceded to her advice not to testify. The soundness of her strategy was reinforced by the trial court's finding that Petitioner was not a good witness. The state court did not unreasonably apply *Strickland* in finding that counsel was not ineffective.

The court of appeals also denied Petitioner's claim that counsel was ineffective in failing to request an expert witness to substantiate the defense of consent. The court noted that Petitioner presented no evidence of consent at trial, sentencing or the *Ginther* hearing. The court of appeals found no support for the claim that an expert witness was necessary for the defense of consent and, accordingly, that counsel was not ineffective in failing to secure an expert. Petitioner has failed to show that the state court's ruling was contrary to or an unreasonable application of *Strickland*. He fails to provide any support for his claim that an expert would have aided his defense. Habeas relief is denied on this claim.

With respect to Petitioner's remaining ineffective assistance of counsel claims, these claims were presented for the first time in Petitioner's motion for relief from judgment. The trial court, the last court to issue a reasoned opinion addressing these claims, held that Petitioner failed to show counsel was ineffective. The trial court noted that, other than conclusory allegations, Petitioner failed to articulate any facts or circumstances to support a finding that an

7

active or ongoing relationship existed between counsel and co-defendant's counsel. The record shows that counsel filed a motion to sever Petitioner's case from that of his co-defendant. Counsel performed vigorous cross-examination of the prosecution's witnesses. She presented a clear defense and Petitioner has not cited with any degree of specificity anything a reasonably competent attorney should have done that she did not. The Court finds that the trial court's decision that counsel was not ineffective was not contrary to or an unreasonable application of *Strickland.*

### C. Prosecutorial Misconduct

Next, Petitioner argues that habeas relief is warranted because the prosecutor engaged in misconduct. Specifically, Petitioner claims that the prosecutor allowed perjured testimony from the victim to go uncorrected and admitted unreliable DNA evidence.

"Prosecutorial misconduct may warrant habeas relief only if the relevant misstatements were so egregious as to render the entire trial fundamentally unfair to a degree tantamount to a due process deprivation." *Caldwell v. Russell*, 181 F.3d 731, 736 (6th Cir. 1999). The determination whether the trial was fundamentally unfair is "made by evaluating the totality of the circumstances." *Angel v. Overberg*, 682 F.2d 605 (6th Cir. 1982). The Court must examine "'the fairness of the trial, not the culpability of the prosecutor.'" *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997), (*quoting Serra v. Michigan Department of Corrections*, 4 F.3d 1348, 1355 (6th Cir. 1993)). The Court must first consider whether the prosecutor's conduct and remarks were improper, and, if so, consider the following four factors to determine " whether the impropriety was flagrant" and thus warrants habeas relief:

> (1) whether the conduct and remarks of the prosecutor tended to mislead the jury or prejudice the defendant; (2) whether the conduct or remarks were isolated or

>     extensive; (3) whether the remarks were deliberately or accidentally made; and (4) whether the evidence against the defendant was strong.

*Girts v. Yanai*, 501 F.3d 743, 758-59 (6th Cir. 2007) (internal quotations omitted).

"[D]eliberate deception of a court and jurors by the presentation of known false evidence is incompatible with rudimentary demands of justice." *Giglio v. United States*, 405 U.S. 150, 153 (1972) (internal quotation omitted). "The same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears." *Napue v. Illinois*, 360 U.S. 264, 269 (1959). A conviction obtained by the knowing use of perjured testimony must be set aside "if 'the false testimony could . . . in any reasonable likelihood have affected the judgment of the jury . . .'" *Giglio*, 405 U.S. at 154 (*quoting Napue*, 360 U.S. at 271); *see also United States v. Agurs*, 427 U.S. 97, 103 (1976). In order to prove this claim, a petitioner must show that

>     (1) the statement was actually false; (2) the statement was material; and (3) the prosecution knew it was false.

*Coe v. Bell,* 161 F.3d 320, 343 (6th Cir. 1999). Petitioner has the burden of proving a *Giglio* violation. *Malcum v. Burt*, 276 F. Supp.2d 664, 684 (E.D. Mich.2003), *citing* Foster v. Ward, 182 F.3d 1177, 1191 (10th Cir. 1999).

In this case, Petitioner has highlighted some inconsistencies in the victim's trial testimony and argued that the DNA evidence was not scientifically sound. Petitioner has failed to demonstrate that any of the testimony was false, rather than simply the result of confusion or that he simply disagreed with it. While a prosecutor may not knowingly use perjured testimony, a prosecutor is not required to ensure that prosecution witnesses' testimony be free from all confusion, inconsistency, and uncertainty. Additionally, Petitioner has failed to offer any

substantive argument that would call into doubt the validity of the DNA evidence offered at trial. Thus, Petitioner has failed to show that the prosecutor presented false testimony.

### D. Admission of Evidence

Petitioner next argues that his due process rights were violated when it ceded control of the proceedings to the prosecution and failed to recognize that it had the right to exclude inadmissible evidence. Specifically, Petitioner argues that the trial court should have excluded the DNA evidence because it was not shown to be reliable or to have been obtained pursuant to generally accepted laboratory procedures.

It is well-established that "'federal habeas corpus review does not lie for errors of state law.'" *Estelle v. McGuire*, 112 S. Ct. 475, 480 (1991), *quoting Louis v. Jeffers*, 110 S. Ct. 3092, 3102 (1990). The Sixth Circuit has held that "[i]n a federal habeas corpus proceeding, it is not the province of a federal appellate court to review the decision of the state's highest court on purely state law." *Long v. Smith*, 663 F.2d 22, 23 (6th Cir. 1981). "Errors by a state court in the admission of evidence are not cognizable in habeas corpus proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial." *Kelly v. Withrow*, 25 F.3d 363, 370 (6th Cir. 1994).

The petitioner has failed to show that the trial court's admission of evidence was contrary to or an unreasonable application of Supreme Court precedent or denied him his fundamental right to a fair trial. Additionally, he has not shown that the trial Court ceded control of the proceedings to the prosecutor. Accordingly, he is not entitled to habeas corpus relief with respect to this claim. *Accord Biros v. Bagley*, 422 F.3d 379, 391 (6th Cir. 2005); *Frazier v. Huffman*, 343 F.3d 780, 789 (6th Cir. 2003); *Shacks v. Tessmer*, 9 Fed. Appx. 344, 353 (6th Cir.

2001).

### E. Ineffective Assistance of Appellate Counsel

In his fourth habeas claim, Petitioner alleges ineffective assistance of appellate counsel as cause to excuse his procedural default. As discussed above, the Court determined that the interests of judicial economy were best served by the Court's addressing the merits of Petitioner's defaulted claims. Nevertheless, the Court will briefly address Petitioner's ineffective assistance of appellate counsel claim.

The Supreme Court has held that a petitioner does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *Jones v. Barnes*, 463 U.S. 745, 754 (1983). The Court further stated:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the . . . goal of vigorous and effective advocacy. . . . Nothing in the Constitution or our interpretation of that document requires such a standard.

*Id.* at 754. Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).

Petitioner claims that appellate counsel was ineffective in failing to raise on direct review the claims Petitioner raised on collateral review and in his habeas petition. Petitioner has failed to show that any of these claims were potentially meritorious. Therefore, Petitioner cannot show that his appellate attorney was ineffective for failing to raise them on direct appeal.

### F. Cumulative Effect

Petitioner argues that the cumulative nature of the alleged errors denied him his right to due process and a fair trial. This claim has no merit because "[t]he Supreme Court has not held

11

that distinct constitutional claims can be cumulated to grant habeas relief." *Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002), *opinion corrected on denial of reh'g*, 307 F.3d 459 (2002), and *cert. denied*, 538 U.S. 947, 123 S. Ct. 1621, 155 L. Ed.2d 489 (2003).

## G. Actual Innocence

Finally, Petitioner argues that he is actually innocent. He asserts actual innocence as an attempt to excuse the procedural default. The Court has addressed the merits of his defaulted claims. Therefore, the Court need not decide whether his claim of actual innocence excuses the default. To the extent that Petitioner also asserts a freestanding actual innocence claim, this claim is without merit.

The United States Court of Appeals for the Sixth Circuit summarized the burden of proof for establishing actual innocence in *Souter v. Jones*, 395 F.3d 577 (6th Cir. 2005):

> The United States Supreme Court has held that if a habeas petitioner "presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims." *Schlup*, 513 U.S. at 316, 115 S.Ct. 851, 130 L.Ed.2d 808. Thus, the threshold inquiry is whether "new facts raise[ ] sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial." *Id.* at 317, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808. To establish actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id.* at 327, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808. The Court has noted that "actual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup*, 513 U.S. at 324, 115 S.Ct. 851, 130 L.Ed.2d 808. The Court counseled however, that the actual innocence exception should "remain rare" and "only be applied in the 'extraordinary case.'" *Id.* at 321, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808.

*Id.* at 589-90.

The Supreme Court has suggested that "in a capital case a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional, and warrant federal habeas relief if there were no state avenue open to process such a claim," but went on to state that the "threshold showing for such an assumed right would . . . be extraordinarily high." *Herrera v. Collins*, 506 U.S. 390, 417 (1993). In *House v. Bell*, 547 U.S. at 554-55, the Supreme Court subsequently declined to resolve whether free standing claims of actual innocence are properly considered in habeas corpus proceedings concluding that, in any event, in the case before it, the "extraordinarily high" threshold for such a hypothetical claim, had not been satisfied.

Even assuming Petitioner's claim of actual innocence may be considered as a freestanding claim, the record fails to reflect that Petitioner has established the high threshold required for such a claim. He presents much argument in favor of a finding of innocence, but has not presented new reliable evidence that was not presented at trial to show that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt.

### IV. Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing Section 2254 Proceedings now requires that the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). A petitioner must show "that reasonable

jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000) (citation omitted). In this case, the Court concludes that reasonable jurists would not debate the conclusion that the petition fails to state a claim upon which habeas corpus relief should be granted. Therefore, the Court will deny a certificate of appealability.

## V. Conclusion

For the foregoing reasons, **IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED** and the matter is **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.


s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: September 30, 2010

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 30, 2010, by electronic and/or ordinary mail.

s/Carol A. Hemeyer
Case Manager